**NEWMAN SIGNS, INC., a North Dakota Corporation, Plaintiff and Appellant,**

**v.**

**Walter HJELLE, as North Dakota State Highway Commissioner, and the North Dakota Highway Corridor Board, Defendants and Appellees.**

**Civ. No. 9394–B.**

Supreme Court of North Dakota.

March 25, 1982.

Edmund G. Vinje, II, Fargo, for plaintiff and appellant.

Albert A. Wolf, Sp. Asst. Atty. Gen., Bismarck, for defendants and appellees.

PAULSON, Justice.

Newman Signs, Inc., appeals from the judgment entered by the District Court of Cass County on September 30, 1980, and from the court's order dated January 20, 1981, denying a motion to amend the findings of fact and the judgment. We affirm.

This is the second time this case has reached this Court. The facts have been set out at length in our prior opinion. *Newman Signs, Inc. v. Hjelle*, 268 N.W.2d 741 (N.D.1978), *appeal dismissed*, 440 U.S. 901, 99 S.Ct. 1205, 59 L.Ed.2d 449 (1979). In 1974, Newman Signs brought this action against Hjelle, as North Dakota State Highway Commissioner, requesting compensation for outdoor advertising signs owned by Newman Signs which were to be removed pursuant to the Federal Highway Beautification Act of 1965, 23 U.S.C. § 131, and the North Dakota Highway Beautification Act, Chapter 24–17, North Dakota Century Code. The first five counts of the action raised issues regarding the compensability of certain categories of signs, and the sixth count was an action for damages. The damage count was severed, and the first five counts were tried without a jury to the District Court of Cass County in August, 1976. The court's judgment of December 10, 1976, was appealed to this Court, challenging the district court's interpretation of the Federal and State acts and the constitutionality of the North Dakota Highway Beautification Act. In *Newman Signs, Inc. v. Hjelle*, 268 N.W.2d 741 (N.D.1978), we held that the State act was constitutional and that the Federal and State laws had been interpreted correctly. We remanded to the district court, however, for determination of two issues which the district court had failed to address: compensation for expanded, reconstructed, or substantially altered signs, and compensation for signs erected without a permit on property on which the State Highway Department held advertising rights.

Newman Signs appealed from our 1978 decision to the United States Supreme Court, which dismissed the appeal for want of a substantial federal question on February 21, 1979. *Newman Signs, Inc. v. Hjelle*, 440 U.S. 901, 99 S.Ct. 1205, 59 L.Ed.2d 449 (1979).

On remand, the district court issued findings of fact and conclusions of law on the issues remanded by this Court. The district court held that signs lawfully erected under State law prior to January 1, 1968, which were expanded or substantially altered would be compensated only as to the value of the sign prior to the expansion or alteration; signs abandoned or reconstructed after abandonment would not be entitled to compensation; signs erected without permits upon property on which the advertising rights had been purchased by the Highway Department would not be entitled to compensation; and signs erected pursuant to interim permits which specifically provided that the sign owner waived any right to compensation were not compensable, notwithstanding a subsequent amendment in Federal law which Newman Signs claimed required compensation for such signs.

Newman Signs has appealed from the district court's judgment and from the court's order denying a motion to amend the findings of fact and judgment. The following issues are presented on appeal:

1. Is compensation required for signs erected after December 1, 1965, pursuant to interim policies requiring permits containing provisions for removal without compensation?

2. Did the district court err as a matter of law in determining that signs which were expanded or substantially altered were to be compensated only as to the value of the signs prior to expansion or alteration?

3. Did the district court err as a matter of law in determining that signs which were destroyed by the elements or vandalism and not reconstructed within one year, or which contained

no advertising copy for one year, would be deemed abandoned and non-compensable?

## I.

█ Newman Signs first contends that it is entitled to compensation for removal of signs which were erected pursuant to interim permits. The interim permits contained the following language:

"UNDER NO CIRCUMSTANCES WILL THE PERMITTEE BE PAID JUST COMPENSATION FOR THE REMOVAL, CHANGING, ALTERING OR MODIFICATION OF ANY SIGN, DEVICE OR DISPLAY ERECTED BY VIRTUE OF THIS PERMIT AND THE PERMITTEE EXPRESSLY WAIVERS [sic] HIS RIGHTS, IF ANY, TO SUCH REDRESS."

This precise issue was resolved in our prior decision in this case. We held that signs erected under interim permits which contained the above waiver of compensation were not lawfully erected under State law for the purpose of compensation. Compensation for their removal was therefore not required.

In reaching this conclusion, we considered the provision in the Federal Highway Beautification Act requiring just compensation for removal of signs lawfully erected under State law, 23 U.S.C. § 131(g). At the time of our decision in the prior appeal of this case, that subsection provided in part as follows:

"(g) Just compensation shall be paid upon the removal of an outdoor advertising sign, display, or device lawfully erected under State law."

Subsection (g) was amended in 1978, and now provides in part as follows:

"(g) Just compensation shall be paid upon the removal of any outdoor advertising sign, display, or device lawfully erected under State law and not permitted under subsection (c) of this section,

whether or not removed pursuant to or because of this section."

In addition, Newman Signs draws our attention to the recently enacted [1] Department of Transportation and Related Agencies Appropriation Act of 1982, Pub.L.No. 97–102, 95 Stat. 1442. The relevant portion of that enactment provides:

### "HIGHWAY BEAUTIFICATION

For necessary expenses in carrying out section 131 of title 23, U.S.C. and section 104(a)(11) of the Surface Transportation Assistance Act of 1978, $2,000,000 to remain available until expended: Provided, That, notwithstanding any other provision of law, any determination as to whether any outdoor advertising sign, display, or device is or has been lawfully erected under State law or is entitled to compensation shall not be affected by any waiver of compensation."

Pub.L.No.97–102, 95 Stat. 1447.

Newman Signs contends that the 1978 amendment to 23 U.S.C. § 131(g) and the enactment of the 1982 Appropriation Act require that this Court overrule its earlier decision on this issue. On remand, the district court held that the 1978 amendment had "no application to the issues" before the court. The 1982 Appropriation Act was enacted after the district court rendered its decision; therefore, its applicability was not addressed by the district court.

We agree with the district court that the 1978 amendment to 23 U.S.C. § 131(g) has no application to this case, and we further conclude that the 1982 Appropriation Act is also inapplicable. When we resolved this issue in our prior opinion in this case, holding that the interim permit signs were not lawfully erected under State law and were therefore not compensable, that result became the law of the case, and the issue is not open for reconsideration on this appeal.

1. The Department of Transportation and Related Agencies Appropriation Act of 1982 was enacted on December 23, 1981, after the oral arguments in this appeal were heard. The parties have filed supplemental briefs discussing the issues raised by the subsequent enactment of this provision.

This Court has on many occasions addressed the doctrine of "law of the case". For example, in *Mulhauser v. Becker*, 74 N.D. 103, 121, 20 N.W.2d 353, 362 (1945), the Court stated:

> "The doctrine of 'law of the case' is based upon the theory of res adjudicata and necessarily applies to the issue determined. Certainty and orderliness require some such doctrine. As said in *Wittmayer et al. v. Security State Bank et al.*, 57 N.D. 934, 224 N.W. 303: 'Questions fairly raised and decided on a former appeal in the same action are not open for consideration on a subsequent appeal; they become the law of the case, and are binding upon the parties in all subsequent stages of the litigation.'
>
> In *Jacobson v. Mutual Benefit Health & Acc. Ass'n*, 70 N.D. 566, 570, 296 N.W. 545, 549, we say: 'The decision on the former appeal became, and is, the law of the case and the questions then determined are not subject to review on this appeal.'"

On several other occasions, this Court has concluded that the decision in a prior appeal is the law of the case, and the issues raised are *res judicata* as between the parties in each particular case. *See, e.g., Gajewski v. Bratcher*, 307 N.W.2d 826, 831 (N.D.1981); *Jennings v. Shipp*, 148 N.W.2d 330, 331 (N.D.1966); *Chicago, Milwaukee, St. Paul and Pacific Railroad Co. v. Johnston's Fuel Liners, Inc.*, 130 N.W.2d 154, 165 (N.D. 1964); *Desautel v. North Dakota Workmen's Compensation Bureau*, 75 N.D. 405, 414, 28 N.W.2d 378, 384 (1947); *Pearce v. North Dakota Workmen's Compensation Bureau*, 68 N.D. 318, 325, 279 N.W. 601, 603 (1938); *Schmidt v. Beiseker*, 19 N.D. 35, 36–37, 120 N.W. 1096 (1909).

The basis for the "law of the case" doctrine was noted by the United States Supreme Court in *Roberts v. Cooper*, 61 U.S. (20 How.) 467, 481, 15 L.Ed. 969, 973–974 (1858):

> "But we cannot be compelled on a second writ of error in the same case to review our own decision on the first. It has been settled by the decisions of this court, that after a case has been brought here and decided, and a mandate issued to the court below, if a second writ of error issued out, it brings up for revision nothing but the proceedings subsequent to the mandate. None of the questions which were before the court on the first writ of error can be reheard or examined upon the second. To allow a second writ of error or appeal to a court of last resort on the same questions which were open to dispute on the first, would lead to endless litigation. In chancery, a bill of review is sometimes allowed on petition to the court; but there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions, or speculate of chances from changes in its members."

Similarly, the Court stated in *Great Western Telegraph Co. v. Burnham*, 162 U.S. 339, 343–344, 16 S.Ct. 850, 852, 40 L.Ed. 991, 993 (1896), that it would be impossible for an appellate court to perform its duties satisfactorily and efficiently "if a question, once considered and decided by it, were to be litigated anew in the same case upon any and every subsequent appeal."

We would further note that the issue of the compensability of the interim permit signs was decided by the United States Supreme Court in its dismissal for want of a substantial federal question of Newman Signs' appeal from our 1978 decision in this case. The issue was specifically raised and briefed by the parties on appeal to the United States Supreme Court.[2] The Supreme Court has held that dismissal of an appeal for want of a substantial federal question is a decision on the merits of the case. *Hicks v. Miranda*, 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223, 236 (1975). Although the Court somewhat limited its holding in *Hicks* in *Mandel v. Brad-*

**2.** Copies of the parties' briefs on appeal to the United States Supreme Court were included in the appendix to the briefs on this appeal, and Newman Signs' brief specifically raised the issue and included an entire section discussing the issue.

*ley,* 432 U.S. 173, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977), the Court noted that the precise issues raised on appeal were necessarily decided by a dismissal for want of a substantial federal question:

> "Summary affirmances and dismissals for want of a substantial federal question without doubt reject the specific challenges presented in the statement of jurisdiction and do leave undisturbed the judgment appealed from. They do prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions."

432 U.S. at 176, 97 S.Ct. at 2240, 53 L.Ed.2d at 205. More recently, the Court has stated that a "summary dismissal of an appeal represents no more than a view that the judgment appealed from was correct as to those federal questions raised and necessary to the decision." *Washington v. Confederated Bands and Tribes of the Yakima Indian Nation,* 439 U.S. 463, 477 n.20, 99 S.Ct. 740, 749 n.20, 58 L.Ed.2d 740, 753 n.20 (1979). It is therefore clear that, although its precedential value is not as great as an opinion rendered after briefing and oral argument on the merits, *Edelman v. Jordan,* 415 U.S. 651, 670–671, 94 S.Ct. 1347, 1359–1360, 39 L.Ed.2d 662, 677 (1974), a dismissal for want of a substantial federal question is a decision on the merits of the particular case presented. Because the issue of whether Federal law required compensation for the interim permit signs was specifically presented to the Supreme Court, the dismissal for want of a substantial federal question was a decision on the merits of this issue, and we are now prevented from reaching an opposite conclusion.

Newman Signs also contends that the actions of Congress in passing the 1978 amendment to 23 U.S.C. § 131(g) and enacting the 1982 Appropriation Act indicates that our prior opinion was incorrect and suggests that the later-enacted statutes should now be applied retroactively to allow just compensation for the interim permit signs. Newman Signs specifically points to legislative history of the 1982 Appropriation Act which indicates that Congress meant to "clarify" its intent regarding compensation for interim permit signs. Newman Signs also contends that dissatisfaction with our 1978 opinion by administrators and members of Congress implies an intent that the later-enacted statutes be applied retroactively.

In *Sikora v. American Can Co.,* 622 F.2d 1116, 1121 (3d Cir. 1980), the United States Court of Appeals for the Third Circuit rejected a similar argument and held that the Federal statute in question was to be applied prospectively only:

> "The repeated references in the legislative history to Congress's intent to 'clarify' the meaning of § 4(f)(2) do not justify an inference that the amendment was to be retroactive. Nor does the fact that Congress specifically disagreed with the Supreme Court's interpretation of § 4(f)(2) in *McMann* necessitate the conclusion that Congress meant to legislate retrospectively. As we held in *United States v. Richardson,* 512 F.2d 105 (3d Cir. 1975), references in the legislative history demonstrating a congressional desire to overcome a specific Supreme Court decision do not determine whether Congress also intended to affect events that had occurred before the enactment date."

The United States Supreme Court has noted that, although generally a court is to apply the law in effect at the time it renders its decision,[3] a statute should not be applied retroactively when doing so would alter rights which had matured or become unconditional, or would impose new and unanticipated obligations on a party. *Bradley v. School Board of City of Richmond,* 416 U.S. 696, 711, 720, 94 S.Ct. 2006, 2016, 2020–2021, 40 L.Ed.2d 476, 488, 493 (1974). The rights and obligations of the respective parties to the instant case have been determined by the highest court of this State and by the United States Supreme Court. Re-

---

**3.** We note, however, that provisions of the North Dakota Century Code are to be applied prospectively unless expressly declared to be retroactive. § 1–02–10, N.D.C.C.

versal of our prior holding regarding interim permit signs would without question affect rights which had matured and impose new and unanticipated obligations on the State. We therefore conclude that the 1978 amendment to 23 U.S.C. § 131(g) and the 1982 Appropriation Act should not be applied retroactively to this case.

■ Finally, we note that the relevant provision in the 1982 Appropriation Act purports to dictate factors which are not to be considered in determining whether signs are lawfully erected under State law. Counsel for Newman Signs has cited no authority which indicates that Congress has the power to retroactively overturn a state court decision construing State law. We have held that the interim permit signs were not lawfully erected under State law for the purpose of compensation. That determination was based upon State law, and subsequent Federal legislation cannot prescribe a different result on this appeal.

We conclude that the 1978 amendment to 23 U.S.C. § 131(g) and the 1982 Appropriation Act have no application to the present appeal. Our prior opinion, holding that compensation is not required for the interim permit signs, is the law of the case.

## II.

■ The second issue presented is whether or not the district court erred as a matter of law in determining that signs lawfully erected prior to January 1, 1968, which were subsequently expanded or substantially altered would be compensated only as to their value prior to expansion or alteration. Newman Signs contends that compensation should be limited only as to signs which were expanded or altered in a manner which evidences a substantial change in the nonconforming *use* of the property.

When we remanded this issue to the district court, we stated:

"To allow more than basic repair and maintenance of a nonconforming sign

would defeat the purpose of the statute. And to construe the statute so as to require the State to compensate a sign owner according to the value of the sign after it has been expanded, reconstructed, or substantially altered would not constitute the payment of 'reasonable damages.'

Because the district court did not deal with this issue, it is necessary to remand the case for a determination of which signs were expanded, reconstructed, substantially altered, or abandoned in such manner as to limit compensation upon removal to the value of the sign before it had been expanded, reconstructed, or substantially altered or to eliminate the requirement of payment of compensation upon removal in the case of abandoned signs."

*Newman Signs, Inc. v. Hjelle, supra,* 268 N.W.2d at 754. Our directions to the district court were clear: Compensation was to be limited for signs expanded, reconstructed, substantially altered, or abandoned, when the expansion, reconstruction, or alteration constituted more than "basic repair and maintenance." [4] This is precisely what the district court did. The district court did not err in determining that compensation for signs which were expanded or substantially altered would be limited to the value of the sign prior to expansion or alteration.

## III.

■ Finally, Newman Signs contends that the district court erred as a matter of law in determining that signs which were destroyed by the elements or vandalism and not reconstructed within one year, or which contained no advertising copy for one year, would be deemed abandoned and non-compensable.

Newman Signs points to the following language in *City of Minot v. Fisher,* 212 N.W.2d 837, 841 (N.D.1973), in support of its contention that the district court erred

---

4. Newman Signs has not argued that the changes made to the signs in question were merely basic repair and maintenance.

in applying a one-year time frame to determine abandonment:

"The third judicial view of the loss of nonconforming uses is, we believe, the most equitable. This view presumes abandonment after the designated period of nonuse has passed, but avoids a due process challenge by not applying the presumption of abandonment in situations where the cessation of use was beyond the control of the property owner.

. . . .

We believe that the ordinance in question in the instant case, when interpreted according to this third judicial view of not applying the presumption of abandonment in situations where the cessation of use was beyond the control of the property owner, is a reasonable and non-confiscatory ordinance. Some situations that have been held to be beyond the control of the property owner are:

'... war ... fire; hurricane; flood; financial inability of the owner to continue in business; inability to find a tenant desirous of using the premises for a purpose permissible as a nonconforming use; ... non-use because of necessary repairs.' *Marchese, supra,* 277 A.2d at 185, Note 9." [5]

In *Fisher,* we held that an ordinance which presumed abandonment after a one-year period of nonuse was valid when interpreted to not apply to situations in which the cessation of use was beyond the control of the property owner. Although no ordinance or statute setting a period of nonuse was applicable in the instant case, we believe it was permissible for the trial court to infer abandonment from a one-year period of nonuse. A determination of abandonment is a finding of fact. *Bellon v. Bellon,* 244 N.W.2d 227, 228 (N.D.1976). In making its findings, the trier of fact may draw inferences from the evidence presented. Therefore, the trial court's inference of abandonment from evidence of a one-year period of nonuse was permissible.

We also note that the district court was careful to limit application of the inference to fall within the guidelines set out in *Fisher.* In its memorandum opinion, the Court stated:

"VII

That previously existing nonconforming signs which were destroyed by the elements, landowners, taken by condemnation proceeding or abandoned by previous owners, shall be deemed to have been abandoned and the reconstruction of such signs by Plaintiff shall eliminate the requirement of payment of compensation upon removal.

VIII

That previously existing nonconforming signs toppled or blown over by wind or vandalism may be re-erected within one year and shall not be deemed to have been abandoned.

IX

That previously existing nonconforming signs which have stood without advertising copy or display or which were toppled or blown over and not re-erected for prolonged periods of time shall be deemed as abandoned after a period of one year, if the cessation of use was not beyond the control of the owner, and shall eliminate the requirement of payment of compensation upon removal."

We conclude that the district court did not err as a matter of law in determining that signs not in use for a period of one year would be deemed abandoned.

The judgment of the district court and the district court's order denying the motion to amend the findings of fact and judgment are affirmed.

ERICKSTAD, C. J., SAND, J., and HODNY and SCHNEIDER, District Judges, concur.

---

5. The citation is to *Marchese v. Norristown Borough Zoning Board of Adjustment,* 2 Pa. Commw.Ct. 84, 277 A.2d 176 (1971).

HODNY and SCHNEIDER, District Judges, sitting in place of PEDERSON and VANDE WALLE, JJ., disqualified.